1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11  | MILLENNIUM LABORATORIES, INC., | CASE NO. 12cv1109 JM(DHB)

12  |                    Plaintiff, | ORDER GRANTING MOTION TO
                                     DISMISS FOR LACK OF SUBJECT
13  |        vs. | MATTER JURISDICTION

     ELAB CONSULTING SERVICES,
14
                          Defendant.

15          Defendant eLab Consulting Services, Inc. ("eLab") moves to dismiss the declaratory relief

16  complaint filed by Plaintiff Millennium Laboratories, Inc. ("Millennium").  Millennium opposes the

17  motion.  For the reasons set forth below, the court grants the motion to dismiss and instructs the Clerk

18  of Court to close the file.

19                                          **BACKGROUND**

20          On May 4, 2012, Millennium commenced this action alleging diversity jurisdiction pursuant

21  to 28 U.S.C. §1332, seeking declaratory relief pursuant to 28 U.S.C. §2201.  Millennium seeks a

22  declaration regarding whether (1) eLab may use Millennium's alleged confidential information; (2)

23  eLab must provide satisfactory evidence to Millennium that it has returned or destroyed the alleged

24  confidential information; and (3) Millennium's confidential information is entitled to protection as a

25  trade secret.  (Compl. ¶28).

26          Millennium alleges that in March of 2008, the parties entered into an agreement whereby eLab

27  agreed to provide "website hosting services to Millennium."  (Compl. ¶8).  Millennium is in the

28  business of providing healthcare professionals with medication monitoring services, clinical tools,

scientific data and education "to improve clinical outcomes and patient safety." (Compl. ¶5). eLab provided web-based storage solutions related to Millennium's laboratory customers and patients. At the time of entering into the agreements, "eLab fully understood and accepted the nature of this relationship and also understood that the provision of Millennium's confidential information to eLab was done under an agreement of trust and confidentiality." (Compl. ¶8).

During the parties' business relationship, Millennium provided eLab with information regarding customer lists, testing practices, preferences and in-office testing protocols, patient results, patient data covered by HIPAA, and other details "regarding its clients; sales data, products and/or services; and [other] information related to Millennium's scientific, technical, financial, research, operations, sales and marketing, employee and business strategies." (Compl. ¶9). Millennium characterizes the information provided as its "Confidential Information." Id.

In about August 2009, eLab's parent company, eLab Solutions, created a new company, eLab Clinical Laboratory, "which is now in direct competition with Millennium as a pain medication monitoring service that offers clinical laboratory drug testing." (Compl. ¶11). The creation of this potentially competing company is of concern to Millennium. Millennium alleges the Confidential Information, "if used by eLab," would provide eLab with "an unfair competitive advantage over Millennium" and permit it to target its customers "and tailor its pitches to Millennium's customers' unique preferences." (Compl. ¶12).

On March 28, 2012, Millennium terminated its relationship with eLab and requested that eLab preserve, return, or destroy its Confidential Information. (Compl. ¶¶13, 14). On April 17, 2012, Millennium made a second written request for the return or destruction of its Confidential Information. Millennium alleges that eLab made several inconsistent representations to the effect that eLab (1) had destroyed all Confidential Information; (2) never had possession of Millennium's Confidential Information; and (3) had maintained Confidential Information on a single hard drive that had been erased, by means of reformatting the disk. (Compl. ¶¶ 17-19). On April 27, 2012, Millennium requested that "eLab consent to an independent inspection of eLab's computers and other data storage devices/locations by an independent IT firm, with the inspection being entirely at Millennium's expense." (Compl. ¶20). eLab refused this request. Id.

1   In its final demand letter of May 1, 2012, Millennium requested that eLab (1) represent that

2   all Confidential Information belongs exclusively to Millennium; (2) acknowledge that eLab has no

3   right to the Confidential Information; (3) provide details about the reformatting of the hard drive; (4)

4   provide a detailed description of its efforts to locate Confidential Information; (5) permit an

5   independent inspection of eLab's computer system/network; and (6) provide a certification that all

6   Confidential Information has been returned or destroyed.  (Compl. ¶21).

7   On May 3, 2012, eLab declined to provide the requested information and responded that

8   "Millennium has never designated any information as confidential or taken measures to protect

9   anything as confidential, other than [in the HIPAA Business Associates Agreement]."  (Compl. ¶22).

10  eLab further responded that it is willing to certify that it complied with its obligations under the

11  HIPAA Business Agreement.  Id.  eLab concluded the letter by indicating that the fee-shifting

12  provisions of California's Trade Secret statutes and Federal Rule of Civil Procedure 11 may be

13  appropriate under the circumstances.  (Compl. ¶26).

14  In light of the above generally described conduct, Millennium seeks a declaration regarding

15  (1) ownership and use of the Confidential Information; (2) the return or destruction of Confidential

16  Information; and (3) the protectability of the Confidential Information as a trade secret.  eLab moves

17  to dismiss the complaint for lack of subject matter jurisdiction because Millennium seeks a declaration

18  of the parties' rights based on a hypothetical state of facts.

**DISCUSSION**

19

**Legal Standards**

20

Federal Rule of Civil Procedure 12(b)(6)

21

22  Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases.

23  United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).  Courts should grant 12(b)(6) relief

24  only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a

25  cognizable legal theory.  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  Courts

26  should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to

27  raise a right to relief above the speculative level."  Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555

28  (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief);

1   Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) (under Rule 8(a), well-pleaded facts must do more than

2   permit the court to infer the mere possibility of misconduct).  "The plausibility standard is not akin

3   to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

4   unlawfully."  Id. at 1949.  Thus, "threadbare recitals of the elements of a cause of action, supported

5   by mere conclusory statements, do not suffice."  Id.  The defect must appear on the face of the

6   complaint itself.  Thus, courts may not consider extraneous material in testing its legal adequacy.

7   Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991).  The courts may, however,

8   consider material properly submitted as part of the complaint.  Hal Roach Studios, Inc. v. Richard

9   Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

10       Finally, courts must construe the complaint in the light most favorable to the plaintiff.  Concha

11   v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996).  Accordingly,

12   courts must accept as true all material allegations in the complaint, as well as reasonable inferences

13   to be drawn from them. Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992).  However,

14   conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6)

15   motion.  In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

16       The Declaratory Judgment Act

17       The Declaratory Judgment Act, 28 U.S.C. §2201, provides that "[i]n case of actual controversy

18   within its jurisdiction, . . . any court of the United States, . . . may declare the rights and other legal

19   relations of any interested party seeking such declaration, whether or not further relief is or could be

20   sought."  The statutory phrase in "case of actual controversy"refers to the type of "cases" or

21   "controversies" that are justiciable under Article III of the U.S. Constitution.  MedImmune, Inc. v.

22   Genentech, Inc., 549 U.S. 118, 125-26 (2007).

23       The exercise of jurisdiction is reasonable where there is a "substantial controversy, between

24   the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

25   of a declaratory judgment."  Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).

26   In other words, the adversarial relationship must reach the point where there is a specific need for the

27   court to declare the rights of the parties.  See J.N.S., Inc. v. Indiana, 712 F.2d 303, 305 (7th Cir. 1983).

28       Declaratory relief may also be proper even if a party's liability is contingent as long as the

contingency is likely to occur.  See Employers Inc. Of Wausau v. Fox Entertainment Group, Inc., 522 F.3d 271, 278 (2nd Cir. 2008) (focus should be "on the practical likelihood that the contingencies will occur").  As cautioned by the Supreme Court, adjudicating the rights and liabilities of the parties in the absence of a case or controversy would violate Article III's prohibition against advisory opinions.  Calderon v. Ashmus, 523 U.S. 740, 747 (1998).

**The Motion**

To place the parties' arguments in context, the court notes that there appears to be two separate agreements (or series of agreements) between the parties.  The first agreement is a HIPAA agreement whereby the parties agreed to maintain the confidentiality of patents and to comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  Millennium does not allege that the HIPAA agreement was breached or that eLab threatened to breach this agreement.  The second agreement, or series of agreements (the complaint is not clear on this point), relates to the provision of "website hosting services to Millennium" by eLab.[1]  (Compl. ¶8).  To carry out these website hosting services, Millennium alleges that it provided eLab with substantial information, including its confidential customer lists, testing practices, patent results, sales data, financial results, and business strategies.  (Compl. ¶9).  eLab further alleges, without more, that this Confidential Information is "protectable as trade secrets."  Id.

Millennium further alleges that in August 2009, eLab created a spin-off company to directly compete with Millennium "as a pain medication monitoring service." (Compl. ¶11).  Over two and one-half years later, on March 29, 2012, Millennium terminated its relationship with eLab and requested the return of its Confidential Information.  (Compl. ¶¶13 - 16).  In response to the demand to return the alleged Confidential Information, eLab informed Millennium that it had destroyed all such information and, alternatively, that it was " never in possession of all of Millennium's Confidential Information, because eLab provided 'software solution services' to Millennium rather than full hosting services, and thus eLab's access to Millennium's Confidential Information was limited and restricted." (Compl. ¶¶17).

---

[1] The court notes that the Complaint does not allege that there is any written agreement between the parties concerning any facet of the parties' business relationship, except the HIPAA agreement.

12cv1109

1         Concerned that eLab may be in possession of Confidential Information, on May 3, 2012,

2  Millennium demanded, among other things, that eLab confirm its destruction of Confidential

3  Information; explain the who, what, where and how the information on the hard drive was destroyed;

4  provide a detailed explanation of its efforts to locate the Confidential Information; and permit an

5  independent IT specialist to search all of eLab's computers and hard drives for Confidential

6  Information. (Compl. ¶21). Notably, the Complaint does not identify any basis, by agreement or

7  otherwise, requiring eLab to comply with Millennium's detailed requests.

8         Here, for several reasons, the court concludes that Millennium fails to identify a substantial

9  controversy of sufficient immediacy warranting declaratory relief.  First, the immediacy of the

10  potential dispute is not apparent.  Millennium alleges that eLab created the alleged competing business

11  in August 2009.  During the two and one-half years since its creation, Millennium does not allege that

12  eLab made any improper use of its Confidential Information.  Moreover, the Complaint's allegations

13  establish that eLab repeatedly represented that it no longer possessed any Confidential Information.

14  While the alleged back-and-forth of attorney correspondence suggests that there may be a difference

15  of opinions (consisting of litigation posturing concerning whether the Confidential Information

16  constitutes a protectable trade secret), this is not a significant factor demonstrating immediacy.

17         Second, Millennium repeatedly alleges that its Confidential Information is protectable as trade

18  secrets. (Compl. ¶9).  However, the Complaint fails to allege one key element to an enforceable trade

19  secret. Millennium does not allege that the alleged trade secret information "[i]s the subject of efforts

20  that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code §3426.1(d)(2);

21  ABBA Rubber Co. v. Seaquist, 235 Cal.App.3d 1, 18 (1991) ("[T]he definition [of a trade secret]

22  consists of three elements: (a) information (b) which is valuable because unknown to others and (c)

23  which the owner has attempted to keep secret.").  Millennium simply does not allege that there was

24  any agreement between the parties to maintain the secrecy of the Confidential Information or that it

25  took any other actions to preserve the confidential nature of the Confidential Information as required

26  / / /

27  / / /

28  / / /

1    by the Uniform Trade Secrets Act.[2]

2            Finally, and most importantly, it is not sufficiently clear whether there is an actual controversy

3    between the parties.  Even assuming the Confidential Information constitutes a protectable trade secret

4    interest, or could be so alleged in an amended pleading, there is no allegation that Millennium is using

5    such information or that it has threatened to do so.  The court also rejects Millennium's suggesting that

6    the "tone and content" of eLab's counsel letter is sufficient to create a substantial controversy.

7    (Compl. ¶26).  The "tone" of a counsel's letter, untethered to any underlying substantial dispute, does

8    not support declaratory relief.  Under these circumstances, Millennium fails to identify a realistic

9    likelihood of immediate harm or the existence of a substantial controversy.

10           In sum, the court concludes that the potential controversy identified by Millennium is not

11   sufficiently crystallized or immediate to warrant declaratory relief.  In the absence of Article III

12   jurisdiction, the court dismisses the action without prejudice.

13           **IT IS SO ORDERED.**

14   DATED:  July 9, 2012

15                                                                  _____

16                                                                  Hon. Jeffrey T. Miller
                                                                    United States District Judge

17   cc:            All parties

18

19

20

21

22

23

24

25

26

_____

27           [2] The complaint alleges that eLab "understood that the provision of Millennium's confidential
     information to eLab was done under an agreement of trust and confidentiality."  (Compl. ¶8).  The
28   court notes that the basis for any understanding of confidentiality is distinct from whether Millennium
     has taken reasonable steps to maintain the secrecy of its Confidential Information.