1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| MILLENNIUM LABORATORIES, INC., | CASE NO. 12cv1109 JM(DHB) |
| Plaintiff, | ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION |
| vs. | |
| ELAB CONSULTING SERVICES, | |
| Defendant. | |

12

13

14

15

16         Defendant eLab Consulting Services, Inc. ("eLab") moves to dismiss the declaratory relief complaint filed by Plaintiff Millennium Laboratories, Inc. ("Millennium").  Millennium opposes the

17

18 motion.  For the reasons set forth below, the court grants the motion to dismiss and instructs the Clerk of Court to close the file.

19

## BACKGROUND

20

21         On May 4, 2012, Millennium commenced this action alleging diversity jurisdiction pursuant to 28 U.S.C. §1332, seeking declaratory relief pursuant to 28 U.S.C. §2201.  Millennium seeks a

22

23 declaration regarding whether (1) eLab may use Millennium's alleged confidential information; (2) eLab must provide satisfactory evidence to Millennium that it has returned or destroyed the alleged

24

25 confidential information; and (3) Millennium's confidential information is entitled to protection as a trade secret.  (Compl. ¶28).

26         Millennium alleges that in March of 2008, the parties entered into an agreement whereby eLab

27 agreed to provide "website hosting services to Millennium."  (Compl. ¶8).  Millennium is in the

28 business of providing healthcare professionals with medication monitoring services, clinical tools,

scientific data and education "to improve clinical outcomes and patient safety." (Compl. ¶5). eLab provided web-based storage solutions related to Millennium's laboratory customers and patients. At the time of entering into the agreements, "eLab fully understood and accepted the nature of this relationship and also understood that the provision of Millennium's confidential information to eLab was done under an agreement of trust and confidentiality." (Compl. ¶8).

During the parties' business relationship, Millennium provided eLab with information regarding customer lists, testing practices, preferences and in-office testing protocols, patient results, patient data covered by HIPAA, and other details "regarding its clients; sales data, products and/or services; and [other] information related to Millennium's scientific, technical, financial, research, operations, sales and marketing, employee and business strategies." (Compl. ¶9).  Millennium characterizes the information provided as its "Confidential Information."  Id.

In about August 2009, eLab's parent company, eLab Solutions, created a new company, eLab Clinical Laboratory, "which is now in direct competition with Millennium as a pain medication monitoring service that offers clinical laboratory drug testing." (Compl. ¶11).  The creation of this potentially competing company is of concern to Millennium.  Millennium alleges the Confidential Information, "if used by eLab," would provide eLab with "an unfair competitive advantage over Millennium" and permit it to target its customers "and tailor its pitches to Millennium's customers' unique preferences." (Compl. ¶12).

On March 28, 2012, Millennium terminated its relationship with eLab and requested that eLab preserve, return, or destroy  its Confidential Information. (Compl. ¶¶13, 14).  On April 17, 2012, Millennium made a second written request for the return or destruction of its Confidential Information. Millennium alleges that eLab made several inconsistent representations to the effect that eLab (1) had destroyed all Confidential Information; (2) never had possession of Millennium's Confidential Information; and (3) had maintained Confidential Information on a single hard drive that had been erased, by means of reformatting the disk.  (Compl. ¶¶ 17-19).  On April 27, 2012, Millennium requested that "eLab consent to an independent inspection of eLab's computers and other data storage devices/locations by an independent IT firm, with the inspection being entirely at Millennium's expense." (Compl. ¶20).  eLab refused this request.  Id.

12cv1109

In its final demand letter of May 1, 2012, Millennium requested that eLab (1) represent that all Confidential Information belongs exclusively to Millennium; (2) acknowledge that eLab has no right to the Confidential Information; (3) provide details about the reformatting of the hard drive; (4) provide a detailed description of its efforts to locate Confidential Information; (5) permit an independent inspection of eLab's computer system/network; and (6) provide a certification that all Confidential Information has been returned or destroyed.  (Compl. ¶21).

On May 3, 2012, eLab declined to provide the requested information and responded that "Millennium has never designated any information as confidential or taken measures to protect anything as confidential, other than [in the HIPAA Business Associates Agreement]." (Compl. ¶22). eLab further responded that it is willing to certify that it complied with its obligations under the HIPAA Business Agreement.  Id.  eLab concluded the letter by indicating that the fee-shifting provisions of California's Trade Secret statutes and Federal Rule of Civil Procedure 11 may be appropriate under the circumstances.  (Compl. ¶26).

In light of the above generally described conduct, Millennium seeks a declaration regarding (1) ownership and use of the Confidential Information; (2) the return or destruction of Confidential Information; and (3) the protectability of the Confidential Information as a trade secret.  eLab moves to dismiss the complaint for lack of subject matter jurisdiction because Millennium seeks a declaration of the parties' rights based on a hypothetical state of facts.

<strong>DISCUSSION</strong>

**Legal Standards**

  Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).  Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief);

1    Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) (under Rule 8(a), well-pleaded facts must do more than

2    permit the court to infer the mere possibility of misconduct).  "The plausibility standard is not akin

3    to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

4    unlawfully."  Id. at 1949.  Thus, "threadbare recitals of the elements of a cause of action, supported

5    by mere conclusory statements, do not suffice."  Id.  The defect must appear on the face of the

6    complaint itself.  Thus, courts may not consider extraneous material in testing its legal adequacy.

7    Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991).  The courts may, however,

8    consider material properly submitted as part of the complaint.  Hal Roach Studios, Inc. v. Richard

9    Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

10        Finally, courts must construe the complaint in the light most favorable to the plaintiff.  Concha

11    v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996).  Accordingly,

12    courts must accept as true all material allegations in the complaint, as well as reasonable inferences

13    to be drawn from them. Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992).  However,

14    conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6)

15    motion.  In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

16        The Declaratory Judgment Act

17        The Declaratory Judgment Act, 28 U.S.C. §2201, provides that "[i]n case of actual controversy

18    within its jurisdiction, . . . any court of the United States, . . . may declare the rights and other legal

19    relations of any interested party seeking such declaration, whether or not further relief is or could be

20    sought."  The statutory phrase in "case of actual controversy"refers to the type of "cases" or

21    "controversies" that are justiciable under Article III of the U.S. Constitution.  MedImmune, Inc. v.

22    Genentech, Inc., 549 U.S. 118, 125-26 (2007).

23        The exercise of jurisdiction is reasonable where there is a "substantial controversy, between

24    the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

25    of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).

26    In other words, the adversarial relationship must reach the point where there is a specific need for the

27    court to declare the rights of the parties.  See J.N.S., Inc. v. Indiana, 712 F.2d 303, 305 (7th Cir. 1983).

28        Declaratory relief may also be proper even if a party's liability is contingent as long as the

1   contingency is likely to occur.  See Employers Inc. Of Wausau v. Fox Entertainment Group, Inc., 522

2   F.3d 271, 278 (2nd Cir. 2008) (focus should be "on the practical likelihood that the contingencies will

3   occur").   As cautioned by the Supreme Court, adjudicating the rights and liabilities of the parties in

4   the absence of a case or controversy would violate Article III's prohibition against advisory opinions.

5   Calderon v. Ashmus, 523 U.S. 740, 747 (1998).

6   **The Motion**

7        To place the parties' arguments in context, the court notes that there appears to be two separate

8   agreements (or series of agreements) between the parties.  The first agreement is a HIPAA agreement

9   whereby the parties agreed to maintain the confidentiality of patents and to comply with the Health

10  Insurance Portability and Accountability Act of 1996 ("HIPAA").  Millennium does not allege that

11  the HIPAA agreement was breached or that eLab threatened to breach this agreement.  The second

12  agreement, or series of agreements (the complaint is not clear on this point), relates to the provision

13  of "website hosting services to Millennium" by eLab.[1]  (Compl. ¶8).  To carry out these website

14  hosting services, Millennium alleges that it provided eLab with substantial information, including its

15  confidential customer lists, testing practices, patent results, sales data, financial results, and business

16  strategies.  (Compl. ¶9).  eLab further alleges, without more, that this Confidential Information is

17  "protectable as trade secrets."  Id.

18       Millennium further alleges that in August 2009, eLab created a spin-off company to directly

19  compete with Millennium "as a pain medication monitoring service." (Compl. ¶11).  Over two and

20  one-half years later, on March 29, 2012, Millennium terminated its relationship with eLab and

21  requested the return of its Confidential Information. (Compl. ¶¶13 - 16).  In response to the demand

22  to return the alleged Confidential Information, eLab informed Millennium that it had destroyed all

23  such information and, alternatively, that it was " never in possession of all of Millennium's

24  Confidential Information, because eLab provided 'software solution services' to Millennium rather

25  than full hosting services, and thus eLab's access to Millennium's Confidential Information was

26  limited and restricted." (Compl. ¶¶17).

27  ────────────────

28       [1] The court notes that the Complaint does not allege that there is any written agreement
    between the parties concerning any facet of the parties' business relationship, except the HIPAA
    agreement.

Concerned that eLab may be in possession of Confidential Information, on May 3, 2012, Millennium demanded, among other things, that eLab confirm its destruction of Confidential Information; explain the who, what, where and how the information on the hard drive was destroyed; provide a detailed explanation of its efforts to locate the Confidential Information; and permit an independent IT specialist to search all of eLab's computers and hard drives for Confidential Information.  (Compl. ¶21).  Notably, the Complaint does not identify any basis, by agreement or otherwise, requiring eLab to comply with Millennium's detailed requests.

Here, for several reasons, the court concludes that Millennium fails to identify a substantial controversy of sufficient immediacy warranting declaratory relief.  First, the immediacy of the potential dispute is not apparent.  Millennium alleges that eLab created the alleged competing business in August 2009.  During the two and one-half years since its creation, Millennium does not allege that eLab made any improper use of its Confidential Information.  Moreover, the Complaint's allegations establish that eLab repeatedly represented that it no longer possessed any Confidential Information. While the alleged back-and-forth of attorney correspondence suggests that there may be a difference of opinions (consisting of litigation posturing concerning whether the Confidential Information constitutes a protectable trade secret), this is not a significant factor demonstrating immediacy.

Second, Millennium repeatedly alleges that its Confidential Information is protectable as trade secrets.  (Compl. ¶9).  However, the Complaint fails to allege one key element to an enforceable trade secret. Millennium does not allege that the alleged trade secret information "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code §3426.1(d)(2); ABBA Rubber Co. v. Seaquist, 235 Cal.App.3d 1, 18 (1991) ("[T]he definition [of a trade secret] consists of three elements: (a) information (b) which is valuable because unknown to others and (c) which the owner has attempted to keep secret.").  Millennium simply does not allege that there was any agreement between the parties to maintain the secrecy of the Confidential Information or that it took any other actions to preserve the confidential nature of the Confidential Information as required

/ / /

/ / /

/ / /

by the Uniform Trade Secrets Act.[2]

Finally, and most importantly, it is not sufficiently clear whether there is an actual controversy between the parties. Even assuming the Confidential Information constitutes a protectable trade secret interest, or could be so alleged in an amended pleading, there is no allegation that Millennium is using such information or that it has threatened to do so. The court also rejects Millennium's suggesting that the "tone and content" of eLab's counsel letter is sufficient to create a substantial controversy. (Compl. ¶26). The "tone" of a counsel's letter, untethered to any underlying substantial dispute, does not support declaratory relief. Under these circumstances, Millennium fails to identify a realistic likelihood of immediate harm or the existence of a substantial controversy.

In sum, the court concludes that the potential controversy identified by Millennium is not sufficiently crystallized or immediate to warrant declaratory relief. In the absence of Article III jurisdiction, the court dismisses the action without prejudice.

**IT IS SO ORDERED.**

DATED: July 9, 2012

_____
Hon. Jeffrey T. Miller
United States District Judge

cc:          All parties

---

[2] The complaint alleges that eLab "understood that the provision of Millennium's confidential information to eLab was done under an agreement of trust and confidentiality." (Compl. ¶8). The court notes that the basis for any understanding of confidentiality is distinct from whether Millennium has taken reasonable steps to maintain the secrecy of its Confidential Information.